# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| **CHRISTY CULWELL,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 4:16-CV-01133-MHH** |
| | } | |
| **NANCY BERRYHILL,** | } | |
| **Acting Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Christy Culwell seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Culwell's claims for a period of disability, disability insurance benefits, and supplemental security income. For the reasons stated below, the Court affirms the Commissioner's decision.[1]

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. (*See* https://www.ssa.gov/agency/commissioner.html). Therefore, the Court asks the Clerk to please substitute Ms. Berryhill for Carolyn W. Colvin as the defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

# I.     PROCEDURAL HISTORY

Ms. Culwell filed for a period of disability, disability insurance benefits, and supplemental security income on November 14, 2012.  (Doc. 8-4, p. 2).  Ms. Culwell alleges that her disability began July 22, 2012.  (Doc. 8-4, p. 2; Doc. 8-6, pp. 2, 6).  The Commissioner initially denied Ms. Culwell's claims on January 8, 2013.  (Doc. 8-5, pp. 4-8).  Ms. Culwell requested a hearing before an Administrative Law Judge (ALJ).  (Doc. 8-5, pp. 2-3).  The ALJ issued an unfavorable decision on November 13, 2014.  (Doc. 8-4, pp. 32-49).  On May 10, 2016, the Appeals Council declined Ms. Culwell's request for review (Doc. 8-3, pp. 2-4), making the Commissioner's decision final and a proper candidate for this Court's judicial review.  *See* 42 U.S.C. §§ 405(g) and 1383(c).

# II.     STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as

adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of

Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Culwell has not engaged in substantial gainful activity since July 22, 2012, the alleged onset date. (Doc. 8-4, p. 37). The ALJ determined that Ms. Culwell suffers from the following severe impairments: degenerative disc disease of the lumbar spine with disc herniation at L5, syringomyelia at C6, fibromyalgia, depression/mood disorder, and anxiety/panic disorder. (Doc. 8-4, p. 37). The ALJ found that Ms. Culwell also has the following non-severe impairments: irritable bowel syndrome; gastroesophageal reflux disease; and osteoarthritis. (Doc. 8-4, p. 38). Based on a review of the medical evidence, the ALJ concluded that Ms. Culwell does not have an impairment or a combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 8-4, p. 40).

In light of Ms. Culwell's impairments, the ALJ evaluated Ms. Culwell's residual functional capacity or RFC. The ALJ determined that Ms. Culwell has the RFC to perform:

light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is unable to climb ladders, ropes, or scaffolds; cannot tolerate any exposure to hazardous, moving machinery or unprotected heights; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; requires a temperature-controlled work environment with no more than occasional exposure to extreme cold or heat; is limited to work that requires no more than the understanding, remembering, and carrying out of simple instructions and has the ability to sustain such activities for two hours at a time over an eight-hour day with no more than the morning, afternoon, and lunch-time breaks routinely allowed in the workplace; and can tolerate frequent changes to the work setting but only occasional interaction with the public, co-workers, and supervisors.

(Doc. 8-4, p. 42).

Based on this RFC, the ALJ concluded that Ms. Culwell is not able to perform her past relevant work as a maintenance supervisor. (Doc. 8-4, p. 48). Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Ms. Culwell can perform, including bakery worker, assembler, and marker. (Doc. 8-4, pp. 48-49). Accordingly, the ALJ determined that Ms. Culwell has not been under a disability within the meaning of the Social Security Act. (Doc. 8-4, p. 49).

## IV.  ANALYSIS

Ms. Culwell argues that she is entitled to relief from the ALJ's decision because the ALJ failed to properly weigh the opinion of treating physician Dr. John Keithan; the ALJ failed to re-contact Quality of Life to confirm the name and title of the examiner who conducted a psychiatric evaluation of Ms. Culwell on

November 18, 2013; and the ALJ did not assess Ms. Culwell's subjective complaints of pain consistent with Social Security Ruling 16-3p. (Doc. 13). In addition, Ms. Culwell asks the Court to remand pursuant to sentence six to require the ALJ to consider a psychological evaluation that Dr. David Wilson completed on July 18, 2016. (Doc. 12). The Court considers these arguments in turn.

### A. Substantial Evidence Supports the ALJ's Decision to Give Dr. Keithan's Opinions Little Weight.

An ALJ must give the opinion of a treating physician like Dr. Keithan "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41*; see also Crawford*, 363 F.3d at 1159 (noting a treating physician's report may be discounted if it is wholly conclusory or not supported by objective medical evidence). "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013) (citing *Lewis v. Callahan*, 125 F. 2d 1436, 1440 (11th Cir. 1997)).

On June 13, 2014, Dr. Keithan completed on Ms. Culwell's behalf a physical capacities evaluation, a clinical assessment of pain form, and an ability to

work form. (Doc. 8-11, pp. 2-4). In the physical capacities assessment, Dr. Keithan opined that Ms. Culwell can sit, stand, and walk for a total of one hour in an 8-hour work day. (Doc. 8-11, p. 2). Dr. Keithan opined that Ms. Culwell occasionally can lift up to 25 pounds, and she never can lift more than 25 pounds. (Doc. 8-11, p. 2). According to Dr. Keithan, Ms. Culwell occasionally can carry up to 10 pounds, and she never can carry more than 10 pounds. (Doc. 8-11, p. 2). Ms. Culwell occasionally can use her hands for simple grasping, pulling, and fine manipulation. (Doc. 8-11, p. 2). Ms. Culwell occasionally can use her right foot and frequently can use her left foot for pushing and pulling of leg controls. (Doc. 8-11, p. 2). Dr. Keithan concluded that Ms. Culwell occasionally can stoop, crouch, kneel, crawl, climb, balance, and reach overhead, and she occasionally can work around unprotected heights, hazardous machinery, marked changes in temperature, and exposure to dust and fumes. (Doc. 8-11, p. 2). Ms. Culwell also occasionally can drive auto equipment. (Doc. 8-11, p. 2). According to Dr. Keithan, Ms. Culwell likely would miss more than four days of work per month because of her impairments or treatment. (Doc. 8-11, p. 2).

In a clinical assessment of pain form, Dr. Keithan circled pre-marked answers on a questionnaire indicating that Ms. Culwell's pain "is present to such an extent as to be distracting to adequate performance of daily activities," and that physical activity will increase Ms. Culwell's pain "to such an extent that bed rest

and/or medication is necessary." (Doc. 8-11, p. 3). Dr. Keithan also noted that side effects from Ms. Culwell's medication would totally restrict Ms. Culwell's ability to "function at a productive level of work." (Doc. 8-11, p. 3).

On the ability to work form, Dr. Keithan circled "no" when asked whether Ms. Culwell is "able to work the equivalent of eight hours a day, five days a week." (Doc. 8-11, p. 4). When asked about the earliest date that Ms. Culwell became unable to work, Dr. Keithan answered, "none." (Doc. 8-11, p. 4). Dr. Keithan circled "yes" when asked whether Ms. Culwell's conditions are expected to last for at least 12 months. (Doc. 8-11, p. 4). On the form, Dr. Keithan provided the following additional information:

> [Ms. Culwell] has multiple medical conditions that have lasting debilitating effects. She has daily pain that limits her physical activities. The patient can no longer perform job duties or daily living activities such as walking long distances or standing for long periods of time.

(Doc. 8-11, p. 4).

The ALJ assigned little weight to Dr. Keithan's opinions. (Doc. 8-4, p. 47).

The ALJ explained:

> Although Dr. Keithan has provided his office notes, those notes document few findings on examination other than [Ms. Culwell's] vital signs. Detailed records from other providers are inconsistent with the severity of physical limitations and pain [Dr. Keithan's] responses indicate as well as his opinion regarding [Ms. Culwell's] absenteeism.

(Doc. 8-11, p. 47).

A few treatment notes support Dr. Keithan's opinions. For example, in May 2011, Dr. Keithan referred Ms. Culwell to rheumatologist Dr. Vishla Chindalore. (Doc. 8-9, p. 66). Dr. Chindalore found that all of Ms. Culwell's fibromyalgia trigger points were positive, and Ms. Culwell had limited range of motion in multiple joints, and her back had some spasms. (Doc. 8-9, p. 66). In February 2012, Dr. Charles Bell examined Ms. Culwell and stated that "[d]ue to rheumatic symptoms [Ms. Culwell] is having difficulty working." (Doc. 8-8, p. 4). On examination, Ms. Culwell's elbows were tender, and Dr. Bell found right bicipital tendinis and left knee crepitus. (Doc. 8-8, p. 5). In the months following a car accident in July 2012, Ms. Culwell experienced tenderness, and doctors treated her for hip pain, neck pain, back pain, and post-concussion syndrome. (Doc. 8-8, pp. 44-52; Doc. 8-9, pp. 5-6, 19-29, 44-45).

On the whole, though, the medical evidence does not support Dr. Keithan's opinions. During a number of visits with Dr. Chindalore in May, August, and October 2011, Ms. Culwell had positive fibromyalgia tender points, but her hands, wrists, elbows, shoulders, ankles, knees, and hips had good range of motion. (Doc. 8-9, p. 65; Doc. 8-10, pp. 4-5). In October 2012, Ms. Culwell's neurologist, Dr. James White, stated that Ms. Culwell should be off work for one month. (Doc. 8-9, p. 51). Dr. White estimated that Ms. Culwell could return to work on November 27, 2012. (Doc. 8-9, p. 51). When Ms. Culwell saw Dr. White on November 26,

2012, she complained that she was "hurting worse down her back and right lower extremity." (Doc. 8-9, p. 17). Dr. White suggested that surgery could repair Ms. Culwell's herniated disc, but Ms. Culwell told Dr. White that "she d[id] not want anything repaired at this point." (Doc. 8-9, p. 17). Dr. White stated that he could refer Ms. Culwell to pain management, but Ms. Culwell responded that she "want[ed] no intervention." (Doc. 8-9, p. 17). Dr. White released Ms. Culwell from care and advised her to return as needed. (Doc. 8-9, p. 17).

Other treatment notes suggest that by the fall of 2012, Ms. Culwell was recovering from the injuries that she had sustained in the July 2012 car accident. When she reported to the emergency room at Gadsden Regional Medical Center on October 4, 2012, Ms. Culwell complained of chest pain, but she denied musculoskeletal pain. (Doc. 8-8, p. 19). A musculoskeletal exam revealed normal range of motion and no swelling, deformities, cyanosis, clubbing, or edema. (Doc. 8-8, p. 19).

In October 2013, when Ms. Culwell saw a nurse practitioner at Quality of Life, Ms. Culwell recently had traveled out of state. (Doc. 8-10, p. 43). Ms. Culwell had tender points in certain regions, but she rated her pain as a zero out of 10, and a musculoskeletal examination revealed normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. (Doc. 8-10, pp. 44-45). In March 2014, Ms. Culwell visited Quality of Life and complained of

shoulder pain that had lasted about two or three months, but a musculoskeletal examination was benign. In addition, the nurse practitioner recommended regular exercise. (Doc. 8-10, pp. 54, 57).

Dr. Keithan's opinions are not supported by objective medical findings in his treatment notes. The record contains 11 treatment notes from Ms. Culwell's visits with Dr. Keithan between July 26, 2012 and June 12, 2014. (Doc. 8-9, pp. 36-37, 43-45, 61; Doc. 8-11, pp. 5-6, 10, 14, 18).[2] Although Dr. Keithan reviewed Ms. Culwell's symptoms and provided some diagnoses, Dr. Keithan did not document physical examination findings. (Doc. 8-9, pp. 36-37, 43-45, 61; Doc. 8-11, pp. 5-6, 10, 14, 18). In addition, on the forms that he completed on Ms. Culwell's behalf, Dr. Keithan did not cite objective medical findings or a specific diagnosis to support his opinions. (Doc. 8-11, pp. 2-4).

The Court finds that substantial evidence supports the ALJ's decision to give Dr. Keithan's opinions little weight. *See e.g., Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 Fed. Appx. 862, 864 (11th Cir. 2012) (substantial evidence supported the ALJ's decision to give less weight to a treating physician's opinion when the doctor's opinion was "inconsistent with the medical evidence on record and was not supported by any treatment notes or by an analysis of any test results."); *Roth*

---

[2] The record indicates that Dr. Keithan has treated Ms. Culwell since at least 2011 (*see* Doc. 8-9, pp. 66, 83), but the first treatment note that appears in the record is one from a visit on July 26, 2012 (Doc. 8-9, p. 45).

*v. Astrue*, 249 Fed. Appx. 167, 168 (11th Cir. 2007) (finding that substantial evidence supported the ALJ's determination that the treating physician's opinion "should not be assigned substantial weight because it was inconsistent with the record as a whole and not supported by the doctor's own medical records."). Based on the applicable legal standard, the Court must accept the weight that the ALJ assigned to Dr. Keithan's assessments, even though there is some evidence in the record that supports those assessments. *See Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830, 833 (11th Cir. 2011) ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence.").

> **B.    The ALJ Did Not Err by Failing to Re-Contact Quality of Life to Confirm the Name of the Provider who Conducted a Psychiatric Evaluation of Ms. Culwell on November 18, 2013.**

On November 18, 2013, a provider at Quality of Life evaluated Ms. Culwell. (Doc. 8-10, pp. 50-53). The electronic signature line on the November 18, 2013 report states "Management Case" and does not provide the name or title of the examiner. (Doc. 8-10, p. 53). In reviewing the opinion evidence in the administrative record, the ALJ assigned no weight to the opinions contained in the November 18, 2013 Quality of Life report or the corresponding GAF score of 50. (Doc. 8-4, p. 47). The ALJ stated:

> Because the report of evaluation reflects no signature and Quality of Life records provide no information regarding the examiner, the

undersigned is unable to determine the author's qualifications or expertise. The severity of impairment suggested by the GAF score is also inconsistent with the mental status examination results recorded and with Dr. [Benjamin] Carr's longitudinal records.

(Doc. 8-4, p. 47).

The Court is not persuaded by Ms. Culwell's argument that the regulations required the ALJ to re-contact Quality of Life to confirm whether a psychiatrist performed the November 18, 2013 evaluation. As Ms. Culwell acknowledges in her reply brief (*see* Doc. 19, pp. 7-9), the regulations that were in effect when the ALJ issued his decision permitted, but did not require, an ALJ to seek clarification from a medical source. The relevant regulation states:

If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (c)(1) through (c)(4) of this section. We might not take all of the actions listed below. We will consider any additional evidence we receive together with the evidence we already have.

(1) We may recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;

. . .

13

20 C.F.R. §§ 404.1520b(c)(1) and 416.920b(c)(1) (effective March 26, 2012 until March 27, 2017). The regulations require an ALJ to re-contact a treating source only if the record is insufficient for the ALJ to make a disability determination. In this case, re-contacting Quality of Life to determine the name and title of the examiner who evaluated Ms. Culwell on November 18, 2013 was unnecessary because the ALJ was able to ascertain the basis of the provider's opinion, and sufficient evidence existed in the record for the ALJ to make a disability determination.

Most of the mental status examination findings in the Quality of Life psychological evaluation suggest that Ms. Culwell's mental impairments do not preclude all work. The report states that Ms. Culwell was oriented to person, place, time, and situation. Her behavior and psychomotor behaviors were unremarkable. Ms. Culwell's memory was intact. Her reasoning, impulse control, judgment, and insight were fair. (Doc. 8-10, p. 52). Ms. Culwell's self-perception was realistic; her thought processes were logical; and her thought content was unremarkable. (Doc. 8-10, p. 53). These findings are consistent with the ALJ's RFC determination.

During the examination on November 18, 2013, Ms. Culwell stated that she "often thinks of suicide but has no plan or intent." (Doc. 8-10, p. 53). This statement is inconsistent with Dr. Carr's treatment of Ms. Culwell. Ms. Culwell

saw Dr. Carr for mental health treatment approximately 20 times between May 2011 and February 2014. During only one of these visits did Ms. Culwell describe suicidal ideas. (Doc. 8-9, p. 81). During all other visits, including ones just several days before and after the November 18, 2013 psychiatric examination at Quality of Life, Ms. Culwell denied suicidal ideas or intentions. (Doc. 8-9, pp. 70, 72, 75, 77, 79, 83, 85, 87, 89, 91, 93, 94-96, 98; Doc. 8-10, pp. 27, 29, 31, 33, 35). In addition, as the ALJ explained, Dr. Carr's treatment notes

> reflect occasional exacerbations [of Ms. Culwell's mood disorder] associated with specific events such as the dissolution of her marriage, the [motor vehicle accident], financial problems, the loss of her job, etc., [but] they also indicate that [Ms. Culwell] responded positively to treatment and that such setbacks were temporary. Overall, his mental status examinations found [Ms. Culwell] to be friendly cooperative with normal speech, normal psychomotor activity, and linear and goal-directed thought processes. [Ms. Culwell's] cognition remained grossly intact and she was able to maintain attention normally. Her insight and judgment were consistently intact as well.

(Doc. 8-4, p. 46; *Compare* Doc. 8-9, pp. 70-99; Doc. 8-10, pp. 27-36).

During the November 18, 2013 evaluation, the Quality of Life provider assigned a GAF score of 50 and diagnosed Ms. Culwell with chronic depression, recurrent generalized anxiety disorder, and recurrent panic disorder. (Doc. 8-10, p. 53).[3] With respect to the assigned GAF score of 50, the GAF scale "'does not have

---

[3] "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social and occupational functioning.'" *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 Fed. Appx. 520, 523 n.2 (11th Cir. 2015) (quoting American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th ed. 1994) (DSM-IV)).

a direct correlation to the severity requirements in [the Social Security Administration] mental disorders listings.'" *Nye v. Comm'r of Soc. Sec.*, 524 Fed. Appx. 538, 545 (11th Cir. 2013) (citing 65 Fed. Reg. at 50765-65). The ALJ accounted for the diagnoses of chronic depression, recurrent generalized anxiety disorder, and recurrent panic disorder because the ALJ found that Ms. Culwell suffers from severe impairments of depression/mood disorder and anxiety/panic disorder. (Doc. 8-4, p. 37). The ALJ also accounted for these diagnoses when, in his RFC assessment, the ALJ limited Ms. Culwell to work that requires no more than understanding, remembering, and carrying out simple instructions and only occasional interaction with the public, co-workers, and supervisors. (Doc. 8-4, p. 42).

The regulations did not require the ALJ to re-contact Quality of Life, and Ms. Culwell has not demonstrated that the ALJ's failure to do so prejudiced her claim because there is no evidence that the ALJ would have changed his analysis had he known that the Quality of Life examiner was a psychiatrist. Accordingly, Ms. Culwell is not entitled to relief. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (an ALJ has a duty to develop a full and fair record, "[h]owever there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record."); *see also Prince v.*

*Comm'r, Soc. Sec. Admin.*, 551 Fed. Appx. 967, 972 (11th Cir. 2014) ("Treating physicians should be re-contacted when the evidence from that physician is insufficient to determine whether the claimant is disabled," and remand is necessary only when the claimant demonstrates "evidentiary gaps that resulted in unfairness or clear prejudice.").

### C. SSR 16-3p Does Not Require Remand.

Ms. Culwell asks the Court to remand this case so that the ALJ may reconsider her subjective complaints of pain in light of Social Security Ruling 16-3p. SSR 16-3p became effective on March 28, 2016. The ruling updates the criteria that an ALJ must use to evaluate a claimant's subjective complaints of pain. Ms. Culwell argues that SSR 16-3p should apply retroactively to the ALJ's November 13, 2014 decision.

Ms. Culwell's argument is not persuasive in light of a recent published decision from the Eleventh Circuit Court of Appeals. *Hargress v. Soc. Sec. Admin., Comm'r.*, --- F.3d ----, 2018 WL 1061567 (11th Cir. Feb. 27, 2018). In *Hargress*, a claimant argued that the district court should remand her case because the ALJ did not evaluate the intensity, persistence, and limiting effects of her symptoms pursuant to SSR 16-3p. *Hargress*, 2018 WL 1061567 at *4. The Eleventh Circuit disagreed, explaining:

> SSR 16-3p rescinded SSR 96-7p, which provided guidance on how to evaluate the credibility of a claimant's statements about subjective

symptoms like pain. *See* SSR 16-3p, 81 Fed. Reg. 14166, 14167 (March 9, 2016); SSR 96-7p, 61 Fed. Reg. 34,483 (June 7, 1996). The new ruling eliminated the use of the term "credibility" in the sub-regulatory policy and stressed that when evaluating a claimant's symptoms the adjudicator will "not assess an individual's overall character or truthfulness" but instead "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities. . . ." SSR 16-3p, 81 Fed. Reg. 14166, 14171. SSR 16-3p further explains that adjudicators will consider whether the "individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." *Id.* at 14170.

*Hargress*, 2018 WL 1061567 at *4.

The Court noted that the claimant in *Hargress* cited no binding authority for the proposition that SSR 16-3p should apply retroactively. *Hargress*, 2018 WL 1061567 at *5. The Court continued:

Moreover, the U.S. Supreme Court has held that administrative rules generally are not applied retroactively. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S. Ct. 468, 471 (1988) ("Retroactivity is not favored in the law. . . . and administrative rules will not be construed to have retroactive effect unless their language requires this result."). SSR 16-3p contains no language suggesting, much less requiring, retroactive application. Indeed, SSR 16-3p explicitly states that it became effective on March 28, 2016, which "actually points the other way." *See Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1351 (11th Cir. 2005) (declining to apply state agency rule retroactively where the rule expressly provided an effective date, explaining that "[t]here is no point in specifying an effective date if a provision is to be applied retroactively"). Thus, SSR 16-3p applies only prospectively and does not provide a basis for remand.

*Hargress*, 2018 WL 1061567 at *5; *see also Green v. Comm'r of Soc. Sec.*, 695 Fed. Appx. 516, 521 (11th Cir. 2017) ("Because SSR 16–3p does not specify that it applies retroactively, and [the claimant] has not provided any authority showing that it applies retroactively, we decline to apply that standard here.").

Consistent with *Hargress*, the Court finds that SSR-16-3p does not apply retroactively to the ALJ's November 13, 2014 decision in this case.

### D.     Dr. Wilson's July 2016 Evaluation Does Not Require Remand.

Ms. Culwell contends that a July 2016 psychological evaluation from Dr. Wilson requires remand under sentence six.  (Doc. 29).  To demonstrate that remand is appropriate pursuant to sentence six, Ms. Culwell must show that: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001) (internal quotation marks and citation omitted); *see also Couch v. Astrue*, 267 Fed. Appx. 853, 857 (11th Cir. 2008) ("A remand under sentence six is "'appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding.'") (quoting *Ingram,* 496 F.3d at 1261).

Dr. Wilson's July 2016 evaluation is new, and Ms. Culwell has shown good cause for not submitting the evidence at the administrative level because the evaluation was not available before the conclusion of the administrative proceedings. *See Magill v. Comm'r of Soc. Sec.*, 147 Fed. Appx. 92, 96 (11th Cir. 2005). However, the Court finds that the new evidence does not require remand because Ms. Culwell has not shown that the evidence is material. "Evidence is 'material' when it is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" *Stone v. Soc. Sec. Admin.*, 658 Fed. Appx. 551, 553 (11th Cir. 2016) (quoting *Milano v. Bowen*, 809 F.2d 763, 766 (1987)).

As part of his July 18, 2016 evaluation, Dr. Wilson reviewed Ms. Culwell's medical, personal, educational, and occupational history. (Doc. 12-1, pp. 1-3). After a mental status interview and examination, Dr. Wilson summarized his findings as follows:

> Ms. Culwell presented as a highly depressed and anxious individual who has even more serious problems since she was rear-ended and sustained a head injury in 2012. She does appear to have some cognitive issues with problems thinking clearly, and she has severe problems with her short term memory and working memory. She cannot afford to be on medication that she needs and this has caused her level of functioning to deteriorate even more. Her ability to withstand the pressures of day to day occupational functioning is highly impaired. She would not be able to handle the interpersonal tasks involved in any job. It is highly unlikely that her condition will improve in the next 12 months.

(Doc. 12-1, p. 5).

Ms. Culwell maintains that Dr. Wilson's July 18, 2016 report "shows a diagnosis of major depressive order, recurrent (severe) and panic disorder." (Doc. 12, p. 1; *see* Doc. 12-1, p. 5). Diagnoses alone do not indicate limitations on a claimant's ability to work. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) ("[T]he mere existence of [] impairments does not reveal the extent to which they limit [a claimant's] ability to work. . . ."); *see also Osborn v. Barnhart*, 194 Fed. Appx. 654, 667 (11th Cir. 2006) (diagnosis alone does not indicate limitations on claimant's ability to work which is "a requisite to a finding of disability"). Of course, Dr. Wilson did not merely provide a diagnosis; he opined that Ms. Culwell's "ability to withstand the pressures of day to day occupational functioning is highly impaired. She would not be able to handle the interpersonal tasks involved in any job." (Doc. 12-1, p. 5).

Although Ms. Culwell's attorney secured Dr. Wilson's evaluation after the ALJ gave no weight to the November 2013 Quality of Life psychiatric assessment (Doc. 18, pp. 2-3), the record contains other evidence of Ms. Culwell's mental condition during the relevant period (*see* Doc. 8-9, pp. 70-99; Doc. 8-10, pp. 27-36, 50-53). And Dr. Wilson's evaluation, which took place 20 months after the ALJ's November 12, 2014 decision, indicates that Ms. Culwell's depression and panic disorder deteriorated over time. Although Dr. Wilson attributes some of the

deterioration to a car accident in 2012, a time that pre-dates the ALJ's decision, Dr. Wilson also attributes some of the deterioration to Ms. Culwell's inability to afford some of her medication, a situation that seemed to evolve after the ALJ issued his opinion. Thus, it is difficult to discern from Dr. Wilson's report the extent to which Ms. Culwell's severe impairments worsened after the ALJ issued his opinion.

Therefore, Dr. Wilson's July 2016 report does not reflect "the extent of [Ms. Culwell's] disability prior to the [ALJ's] decision, which was well-documented through other medical evidence." *See Gallina v. Comm'r of Soc. Sec.*, 202 Fed. Appx. 387, 389 (11th Cir. 2006); *see also Hearings, Appeals, and Litigation Law Manual for the Social Security Administration*, I–3–3–6(B) ("Evidence is not related to the period at issue when the evidence shows . . . [a] worsening or the condition or onset of a new condition after the date of the ALJ decision."). Accordingly, Ms. Culwell's new evidence does not provide a reasonable possibility that the ALJ would change his decision regarding the period of time that the ALJ considered.

## V.    CONCLUSION

For the reasons discussed above, the Court finds that substantial evidence supports the ALJ's decision, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the

Commissioner. Accordingly, the Court affirms the Commissioner's decision. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 9, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE